UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 1:05CV181 HEA |
| NORMAN MEDLEY, | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the Order and Report and Recommendation of United States Magistrate Judge Lewis M. Blanton, [Doc. No. 74], pursuant to 28 U.S.C. § 636(b), in which Judge Blanton recommends that Defendant's Motion to Suppress Evidence and Statements, [Doc. No. 24], be denied. The Defendant has filed Objections to the Report and Recommendation and has submitted a Statement of Facts in Support of these objections.

When a party objects to the magistrate judge's report and recommendation, the Court must conduct a *de novo* review of the portions of the report, findings, or recommendations to which the party objected. See *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir.2003) (citing 28 U.S.C. § 636(b)(1)). This includes a *de novo* review of the magistrate's findings of fact, including any credibility determinations.

*Id.* The court has reviewed the entire record, including listening to the audio recordings of the hearings held on February 23 and 24, 2006 and March 10 and 22, 2006, and reading the transcript thereof.

## **Factual Findings**

The subject matter of the Report and Recommendation and of Defendant's Objections thereto are detailed as follows. The Defendant contends that the facts establish that certain statements and evidence were obtained illegally: that the entry into his residence was illegal; that he did not voluntarily orally consent to the search of his home; that the written consent was obtained by coercion; and that the seizure of a prescription drug bottle from his person was obtained through an unreasonable search.

The testimony presented at the hearings establishes the following: Sergeant Mark McClendon had been contacted by Deputy Midkiff from the Dunlin County Sheriff's office in regard to a burglary on December 8, 2005. McClendon was advised that the burglary had taken place in Dunlin County and that some weapons had been stolen, a DVD player and a ceiling fan had also been stolen. Two subjects, Chris Johnson and Dennis Lebo, were arrested. Some of the weapons had been recovered at the time. Johnson and Lebo said that they were going to go back to the Defendant's residence to obtain some methamphetamine in exchange for the

weapons that they had left at Defendant's residence.

McClendon talked with both Johnson and Lebo when he arrived at the Dunklin County Sheriff's office. They discussed the information provided by Johnson and Lebo. Johnson and Lebo said that they left the remaining weapons at the Defendant's residence, along with the other property. The subjects agreed to wear recording devices and went to the Defendant's residence.

At approximately 9:00, the subjects arrived at the Defendant's residence. Although the transmission was not completely clear, McClendon was able to hear the Defendant talk about some weapons- a 30.06 and a .270- in particular. After the subjects visited the Defendant's home, they returned to talk with McClendon. They told him that they had seen the DVD player in the home. McClendon and Midkiff decided to get a group of officers together to go out to the Defendant's residence and arrest him for possession of stolen property.

At approximately 9:50 p.m., McClendon, Deputies Midkiff, and Hopkins, and Bootheel Drug Task Force Agents Higgins and Decker, and Missouri State Highway Patrolman Scoggins went to the Defendant's residence. Upon arrival, Hopkins knocked on the door. The Defendant asked who it was; Hopkins replied it was the police. The Defendant did not open the door at that point and after about three seconds, McClendon advised Hopkins to kick the door. The kick did not cause the

door to open. Rather it caused it to buckle and return into place. The door was not broken. At that point, the Defendant opened the door, stepped aside and allowed them to enter. McClendon told the Defendant why the officers were there-- that they were there to investigate a burglary. The Defendant was asked to keep his hands up and was asked to empty his pockets, which he did. A prescription bottle of someone else was produced. The Defendant was then placed under arrest for unlawful possession of a controlled substance. He was given his *Miranda* warnings at that time and was asked for his consent to search the mobile home. The Defendant told McClendon that he didn't know anything about a burglary and that the officers could conduct the search.

The officers search Defendant's home. While the search was taking place, Defendant signed a consent to search form. The officers found and seized loose marijuana and a marijuana cigarette; 4 Super X .22 caliber rounds with the marijuana; a black "Mudd" case containing 6 rounds of Winchester .270 caliber ammunition; a Regent DVD player; and a boxed ceiling fan.

When asked about the .270 caliber ammunition, Defendant stated that he unloaded the rifle that Johnson and Lebo brought to his residence. He also stated that the ceiling fan was not stolen and that he bought it at a yard sale. He denied receiving any firearms. Defendant was arrested on state charges related to the

stolen property and marijuana.

The Defendant later asked to speak with McClendon. On December 15, 2005, McClendon met with Defendant. He was again given his *Miranda* warnings. The Defendant asked if McClendon could get his federal firearms dropped. McClendon told him it was up to the prosecution, and that he, McClendon, would relay any information provided to the prosecutor. At this point, the Defendant stated that Johnson and Lebo came by his residence with several guns and asked him if he was interested in them. He said no, but he took the DVD player they offered to him. He did not provide anything at that time in exchange, nor did he promise a later delivery of anything in exchange. He said that he had offered to help them hide the guns. He told them of a place to hide the guns near a field road close to his house. He later went to the hiding place and took the ammunition out of the .270 caliber rifle and moved it to a different location.

During the hearings, the Defendant offered the testimony of his girlfriend, Cassidy Bowles. Ms. Bowles testified that she did not hear the Defendant orally consent to the search and that the Defendant was forced into signing the written consent form. This Court agrees with Judge Blanton that Bowles' testimony should be rejected in this regard. Bowles testified that she was not present during the entire time the officers were talking with Defendant. Furthermore, she testified that the

atmosphere during the search was polite and cordial, friendly and cooperative. This testimony contradicts Bowles' testimony that Defendant was told to "sign this damn paper, Mr. Medley," by Midkiff.

The Defendant also presented the testimony of his mother, Barbara Medley. Medley testified that she went down to the Defendant's residence when she saw the police cars parked outside the mobile home. She testified that the "door was tore up on both sides." Defendant seizes this testimony to support his position that the officers entered his home by force, however, Barbara Medley's testimony belies this position in that she also testified that she <u>opened</u> the door of the mobile home, walked in and asked what was going on. Although she did not hear the consent, she was not present at the time it was made. She did testify that the Defendant did not appear upset.

The Defendant urges that the testimony of Lebo controverts testimony regarding what the officers knew prior to arriving at the mobile home. Lebo, however, also testified that the Defendant told him what to say and that he was afraid of the Defendant. Lebo's initial testimony is therefore not credible.

## **Discussion**

The Defendant contends that there was no consent or legal authority to search his mobile home. As such, he argues that any statements made and items seized

must be suppressed.

The Government has stated on the record that it will not use the evidence and statements regarding the prescription pills obtained during the search. The Defendant's motion regarding these is therefore denied as moot.[1]

With respect to whether the officers search was legal, the Court looks at the totality of the circumstances to determine whether entry into the mobile home was lawful and whether consent to search was given.

The Fourth Amendment guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . " U.S. Const. amend. IV. In accordance with that guarantee, a warrantless search of a home must be supported by consent or probable cause and exigent circumstances. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987); *Radloff v. City of Oelwein,* 380 F.3d 344, 348 (8th Cir.2004).

Probable cause exists when, "given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *Kleinholz v. United*

---

[1] Defendant seeks an embodiment of the Government's position regarding the prescription pills in the form of an Order from this Court granting suppression. Such is not necessary since the record clearly indicates the Government's unequivocal position that it will not use either the statement made or the pills themselves. The motion is clearly moot, and should be denied.

*States,* 339 F.3d 674, 676 (8th Cir.2003) (internal quotations omitted). Exigent circumstances exist if an objectively reasonable officer present on the scene would have sufficient grounds to believe an exigency existed. *United States v. Schmidt,* 403 F.3d 1009, 1013 (8th Cir.2005). Exigent circumstances may exist if there is a "compelling need for official action and there is no time to secure a warrant." *Radloff,* 380 F.3d at 348 (citing *Michigan v. Tyler,* 436 U.S. 499, 509 (1978)). *U.S. v. Poe* 462 F.3d 997, 999 -1002 (8th Cir. 2006).

At the time the officers decided to go to the Defendant's home, they had talked with Johnson and Lebo, who admitted to the burglary. They provided information that weapons and other stolen property had been given to the Defendant.. They knew that Defendant had been in trouble previously with the law. They heard mention of the weapons by the Defendant on the transmitted conversation. They also had information that Defendant was to provide methamphetamine in exchange for the stolen goods. Johnson and Lebo stated that the Defendant had made threats about killing the cops if they came out. Considering the totality of the circumstances, it was reasonable to believe that contraband and/or stolen property was at the Defendant's residence and that the circumstances required that they go to the mobile home without a warrant.

Furthermore, the evidence establishes that the officers did not break into the

mobile home, rather the Defendant allowed them entry. Whether they were exempt from the knock and announce rule, (an issue which is largely academic because there is evidence that they did in fact knock and announce), is not determinative since the officers did not forcibly enter the mobile home. When the door was kicked, Defendant advised them to "hold on" and that he would "get it." Likewise, Defendant stepped aside and allowed the officers in. He was asked if they could search and he answered affirmatively. Under the *Chaidez* factors, as articulated by Judge Blanton, and considering the totality of the circumstances, Defendant's actions and oral acquiescence to the search was voluntary.

Because Defendant orally consented to the search, whether the signed consent was forced is also somewhat academic, however, the record before the Court regarding the atmosphere and disposition of the parties involved, establishes that the testimony of McClendon is more credible than Bowles regarding whether the Defendant was told to "sign the damn form, Mr. Medley."

## **Conclusion**

The record before the Court, including the transcript of the hearings clearly establishes that the officers were on the scene legally and that the Defendant voluntarily consented to the search of his mobile home. As such, the evidence and statements, with the exception of the prescription pills, were obtained legally and

are not subject to suppression. The Court therefore adopts Judge Blanton's well-reasoned Report and Recommendation in its entirety and incorporates its findings of fact and conclusions of law herein.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Evidence and Statements, [Doc. 24], is denied.

Dated this 5th day of January, 2007.

_____
    HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE